# IN THE COURT OF APPEALS OF IOWA

No. 25-1008
Filed September 4, 2025

IN THE INTEREST OF J.O., N.L., and A.O.,
Minor Children,

R.O., Mother,
Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Matthew A. Schuling, Judge.

A mother appeals the termination of her parental rights to her children under Iowa Code section 232.116(1)(e), (h), and (*l*) (2025). **AFFIRMED.**

Whitney A. Estwick, Omaha, Nebraska, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Abby L. Davison of the Office of the State Public Defender, Council Bluffs, attorney and guardian ad litem for minor children.

Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

A mother appeals[1] the termination of her parental rights to her three children under Iowa Code section 232.116(1)(e) and (*l*) (2025) and to the youngest under paragraph (h) as well. She argues the State failed to prove the grounds for termination, termination is not in the children's best interests, the juvenile court should have applied permissive exceptions to termination, and the Iowa Department of Health and Human Services failed to fulfill its obligation to make reasonable efforts towards reunification. We affirm.

## I. Background Facts and Proceedings

A.O., J.O., and N.L. were born in 2017, 2021, and 2023, respectively. The children first came to the attention of the department in 2021 when J.O. tested positive for THC, cocaine, and methamphetamine at birth. A.O., who was four years old, tested positive for methamphetamine, cocaine, cannabinoids, and THC. Following J.O.'s birth, the State petitioned to have A.O. and J.O adjudicated children-in-need-of-assistance (CINA). The children were adjudicated as CINA, removed from parental custody, and placed with their maternal uncle and his partner, A.M. The children were returned to the mother nine months later following her completion of mental-health treatment and her separation from the legal father.

The children again came to the attention of the department in 2022 when it and the Council Bluffs police received reports that the parents were using cocaine around the children. The department and police showed up at the children's home

---

[1] The legal father's parental rights to the children were also terminated, and he does not appeal. The parental rights of the unknown biological fathers were also terminated.

unannounced and found the mother with "a black right eye with blood pooling in the white of her eye." The children were again placed with A.M., a suitable other. Both children tested positive for methamphetamine and amphetamine, and J.O. tested positive for cocaine. The department uncovered evidence of multiple incidents of the father beating the mother, spanking J.O., as well as once setting fire to objects in the backyard upon becoming angry. The children were again adjudicated as CINA and were not returned to the parents until fourteen months after initiation of the CINA proceedings, "when the mother had fully engaged in mental health treatment" and separated again from the father.

Following N.L.'s birth in 2023, the children yet again came to the department's attention. J.O tested positive for methamphetamine, and N.L. tested positive for THC. In the 2024 order adjudicating the children as CINA, the juvenile court found the mother was using methamphetamine and marijuana in the family home. The children had access to those illegal substances and associated paraphernalia. The mother also "admitted that her mental health is not stable and render[ed] her unable to safely provide care for the children." And "[i]n violent rages [the father] pulled [the mother]'s hair, pushed [her], and hit and strangled [her]." The mother completed a substance-use evaluation but restricted the CINA court or the department from reviewing it. The mother continued to be in an active relationship with the father despite the abuse. The court emphasized the importance that the parents adhere to the case plan for reunification due to the extensive prior history of dangerous substance use and physical abuse.

Since the 2024 adjudication order, the mother has been offered many services by the department. She was offered family centered services (FCS),

SafeCare, psychology evaluation, parenting assessment, and recommendations based on her evaluation reports. But the mother did not utilize those services. The mother intermittently engaged in FCS but also cancelled appointments and failed to reschedule without explanation. Although she has faced extensive domestic violence, she refused to participate in SafeCare or other offered domestic violence services. Despite being offered budgeting assistance, she was not willing to complete a budget with FCS. The mother completed another set of substance-use evaluations but refused to follow the recommendations, which included weekly sessions and inpatient treatment. The mother tested positive for fentanyl as recently as November 2024 and "no-showed" for two drug screens subsequent to that. Yet, she continues to deny substance use. She was unable to move past supervised visits, "[did] not engage in verbal communication with [N.L.]," and N.L cried during the visits.

The children's therapist raised concerns with the visits, which were supported by the guardian ad litem. J.O. became extremely distressed in anticipation of visits, which caused him to "pee[] his pants," "hit[] his sister," and display other acts of increased aggression which, in turn, have "contribute[d] to functional impairments" in his development. A.O. exhibited "severe anxiety" when the topic of his mother was raised and insisted the mother would "call him a liar" for candidly reporting his experiences with her to his therapist. "He reported that he would run away and hide to prevent himself from going to visitation with his mother."

Visits were subsequently suspended. The mother continued to decline substance-abuse treatment. She also suggested that she may lose her

employment and housing. Her therapist informed her that inpatient treatment could potentially offer her an apartment, but she continued to decline the service. The State then filed the petition to terminate parental rights to the children, citing the mother's refusal of services, domestic violence, drug use, and the children's continued struggles with visits.

The juvenile court subsequently terminated the mother's parental rights as to all three children under Iowa Code section 232.116(1)(e) and (*l*) and as to N.L. under section 232.116(1)(h).

## II. Standard of Review

We review termination proceedings de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* Our review on termination proceedings follows a three-step process to determine if (1) a statutory ground for termination has been established, (2) termination is in the children's best interests, and (3) any permissive exceptions should be applied that preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

## III. Discussion

### A. Grounds for Termination

When the district court terminates an individual's parental rights on more than one statutory ground, we may affirm termination on any one of the cited grounds we find supported in the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

Under Iowa Code section 232.116(1)(e), a parent's parental rights to a child may be terminated when the juvenile court finds all the following:

> (1) The child has been adjudicated [CINA] pursuant to section 232.96.
>
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
>
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

The mother provides a two-sentence argument on this ground. In response to the third element—failure to maintain significant and meaningful contact with the children—she contends she "consistently attended her visits with the children and brought snacks and food for the children. The children interacted well with [the mother] and know her as their mom."

But the juvenile court suspended the mother's visits in early February—nearly three months before the termination trial took place. . And she failed to make a genuine effort to complete the responsibilities prescribed in the case permanency plan," which would in turn demonstrate "a genuine effort to maintain communication with the child[ren]." *See id.* Her continued refusal to complete substance-use treatment, SafeCare, psychology evaluation, other FCS, and failure to reach the recommendation stage of those evaluations, all demonstrate her wavering to nonexistent commitment to participation in the permanency plan. *See In re T.S.*, 868 N.W.2d 425, 437 (Iowa Ct. App. 2015) (affirming termination under paragraph (e) where parent did not address "domestic abuse, substance abuse or

mental health issues, and have not made a genuine effort to address these issues"). And the mother's last-minute mental-health evaluation the week before the termination trial does not convince us she is committed to "permanent changes signaling a safe and stable future for these children." *In re A.H.*, 950 N.W.2d 27, 41 (Iowa Ct. App. 2020). The grounds for termination under section 232.116(1)(e) were met.

### B. Best Interests

The second step in our analysis is to consider the factors under section 232.116(2). Section 232.116(2) requires us to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."

We "look to the child's long-range as well as immediate interests." *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted). The best-interests analysis requires we look to "what the future holds for the child if returned to the parents. When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *Id.* (citation omitted).

There is no doubt to us that termination is in the children's best interests here. Although the mother was intermittently participating in visits prior to their suspension, the children have been visibly traumatized by her prior care. The older children have been subject to multiple CINA adjudications and removals. All children have tested positive for dangerous substances. The children's positive results for methamphetamine are particularly alarming—"[m]ethamphetamine is a

scourge." *In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017). We have consistently stated that "[a] parent's methamphetamine use, in itself, creates a dangerous environment for children." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020). But this case surpasses mere "use" of methamphetamine by the mother—the substances have directly come in contact with the children as evidenced by their positive drug screens, and the mother has not taken action to address her substance-use issues. Additionally, the children have been subject to abuse and J.O. and A.O., in particular, demonstrate distress during visits with their mother. Between the substance-use, domestic abuse, and mother's failure to utilize services, there are a host of issues blocking any reasonable path to permanency with the mother.

Lastly, the department reported that the children are thriving in their current placement and that placement would like to provide the children a permanent home. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

Termination is in the children's best interests.

### C. *Permissive Exceptions and Department's Reasonable Efforts*

We must next decide if any exceptions to termination exist under section 232.116(3). The mother contends that the closeness of the parent-child relationship precludes termination. Regardless of whether the parent "loves her [children], our consideration must center on whether the child will be disadvantaged by termination and whether the disadvantage overcomes [the

parent]'s inability to provide for [the children]'s developing needs." D.W., 791 N.W.2d at 709.

We do not doubt the mother's claim that she loves the children. But she has not demonstrated any ability to provide for the children's needs, which would be particularly challenging considering their adverse reactions to her visits and her refusal to address the permanency goals. According to their therapist, the children's needs have been best served by suspending visits with the mother. The children are currently in a loving placement that provides them a path to permanency. We decline to apply any permissive exception.

### D. Reasonable Efforts

Lastly, the mother contends that the department "did not work with [her] at maximizing contact between her and the children" and argues she "engaged in services, attended her visits, attended drug screen, which were negative [from] December 2024 [to] February 2025." The State has a duty to make "reasonable efforts" towards reunification by working "to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home." Iowa Code § 232.102A(1)(a). But "parents have a responsibility to object when they claim the nature or extent of services is inadequate. A parent's objection to the sufficiency of services should be made early in the process so appropriate changes can be made." *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) (cleaned up).

Because the mother failed to contest reasonable efforts prior to the termination hearing, and even now she fails to identify specific services which were

not provided, she has failed to preserve error on the issue. But her argument fails on the merits as well. As we have already extensively addressed, any visitation failures were not caused by the department's failure to facilitate visits. The mother failed to consistently attend visits for the entirety of the scheduled times and did not engage with the children during the visits. The children's distress from visits necessitated the suspension—suspension did not result from the department's failure to engage with the family. The mother has not made a genuine effort to complete the responsibilities prescribed in the case permanency plan, and her continued refusal to complete substance-use treatment, SafeCare, psychology evaluation, other FCS, and failure to reach the recommendation stage of those evaluations are all examples of discrete services the department has offered but she has failed to utilize.

Accordingly, we affirm.

**AFFIRMED.**